A00A0748. MANN v. THE STATE.
A00A0749. LANE v. THE STATE.
(536 SE2d 608)

PHIPPS, Judge.

Bobby Dale Mann and Roger Warren Lane were each charged with four counts of aggravated child molestation, three counts of child molestation, two counts of enticing a child for indecent purposes, and two counts of sexual exploitation of a child. A jury found each guilty of one count of aggravated child molestation and one count of child molestation. On appeal, Mann and Lane challenge the sufficiency of the evidence and the exclusion of a prior allegation of molestation by one of the victims (V. E.). Mann also challenges the court's refusal to declare a mistrial after two of the State's witnesses made statements that he claimed improperly placed his character into evidence and its refusal to allow defense counsel to impeach the mother of one of the victims with evidence of her daughter's prior molestation. Lane asserts as error the exclusion of evidence that V. E.'s mother was sexually abused, the failure to grant a continuance when the State filed a motion in limine the day of trial, and prosecutorial misconduct. Viewed in the light most favorable to the verdict, the evidence was sufficient to allow the jury to find Mann and Lane guilty beyond a reasonable doubt. We find no error in the trial court's rulings on Mann's motions for mistrial or on the State's motions in

---

[7] See *S & W Seafoods Co. v. Jacor Broadcasting &c.*, 194 Ga. App. 233, 237 (5) (390 SE2d 228) (1990).

limine and affirm.

We first address Mann's claims of error.

1. Mann contends the evidence was insufficient to convict him of child molestation or aggravated child molestation. He claims there were inconsistencies between the victims' (R. C.'s and V. E.'s) taped interviews with the Department of Family & Children Services (DFACS) and their trial testimony.

"On appeal from a criminal conviction, the evidence is construed in the light most favorable to the verdict of guilt, and the presumption of innocence no longer applies."[1] As an appellate court, we do not weigh the evidence, judge the credibility of witnesses, or resolve conflicts in trial testimony when the sufficiency of the evidence is challenged.[2] Instead, we determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3]

R. C., a four-year-old boy, lived with his mother and visited his father and stepmother every other weekend. In late March and early April 1998, R. C. began to have nightmares while staying at his father's house. On April 17, 1998, R. C.'s stepmother walked into R. C.'s bedroom and saw him "sucking [another little boy] between the legs." She asked R. C. how he had learned to do that, and R. C. responded "maybe somebody did it to Bobby." R. C. identified Bobby as "that man that lives with my mama." At the time, R. C.'s mother was dating Mann, who was living with Lane, R. C.'s uncle.

The next morning, when his father asked him where he learned the act, R. C. responded that maybe somebody had done it to "Bub," his name for Lane. R. C. also said that he had done it before with Mann and three other children, including V. E. R. C.'s father immediately took him to the police station, where he spoke to Officer Clark. R. C. told Officer Clark that Mann and Lane had "sucked him between the legs" and that Mann had made R. C. "suck [him] between the legs." Officer Clark told Leonard Evans, an investigator with the Polk County DFACS, about the complaint, and Evans and Clark conducted a second interview of R. C. that same day. During his interview with DFACS, R. C. said that three children, including V. E., had "touched him in his private place," but did not mention Mann or Lane. At trial, R. C. testified that no "big people" had touched him where they should not have.

On April 23, 1998, Officer Clark interviewed V. E., a seven-year-old girl who lived next door to Mann and Lane. V. E. told Officer Clark that R. C. had come over and asked her to come and play at

[1] *Bohannon v. State*, 208 Ga. App. 576 (1) (431 SE2d 149) (1993).

[2] Id.; *Dismuke v. State*, 261 Ga. 254 (1) (403 SE2d 812) (1991).

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Lane's house. According to Officer Clark, V. E. said that while she was there, Mann and Lane made her and R. C. pull their pants down and made her put her mouth and hands on R. C.'s private parts. V. E. told Officer Clark that Mann and Lane had threatened to break R. C.'s back and break both of their necks if they did not do what they were told.

DFACS conducted two videotaped interviews with V. E., one on April 21, 1998, and another on April 23, 1998. During the first interview, which the trial judge excluded from evidence prior to trial, V. E. stated that someone named Mickey had touched her inappropriately. At home after the interview, she told her mother that Mann and Lane had made her "suck [R. C.] between his legs" and had warned her that if she told anyone, they would break her neck and kill her puppies. V. E.'s mother called DFACS and scheduled another interview for V. E.

During the second interview, V. E. told DFACS investigator Evans that Mann and Lane had made her and R. C. pull their pants down and had told her to touch R. C. "where he goes to the bathroom." V. E. said that she had to do it because they threatened to break her neck. V. E. also told Evans that Mann and Lane made her suck R. C. "where he goes to the bathroom." Although V. E. was very reluctant to tell Evans what had happened, her second videotaped statement was consistent with what she had told her mother and what she told Officer Clark.

At trial, V. E. testified that Mann and Lane made her "suck [R. C.] where he uses the bathroom" and made R. C. do the same to her. She testified that Mann and Lane threatened to break her back and kill her puppies if she told what had happened.

Mann was convicted on Count 1, causing V. E. to put her mouth on the penis of R. C., and Count 7, causing V. E. to touch the penis of R. C. V. E.'s trial testimony was sufficient to authorize the conviction on Count 1.[4] V. E.'s second videotaped interview and Officer Clark's testimony of his interview with V. E., to which there was no objection, were sufficient to authorize the conviction on Count 7.[5]

2. Mann challenges the trial court's exclusion of prior allegations of molestation made by V. E. in her initial interview with DFACS. He contends that the allegations were false and should have been admitted to attack V. E.'s credibility.

---

[4] *Johnson v. State*, 231 Ga. App. 823 (1) (499 SE2d 145) (1998); *Cantrell v. State*, 231 Ga. App. 629, 630 (500 SE2d 386) (1998).

[5] See *Godbey v. State*, 241 Ga. App. 529, 532 (2) (526 SE2d 415) (1999) (where defendant fails to object to testimony admitted under child hearsay statute, OCGA § 24-3-16, issue not preserved for review).

The rape shield statute's[6] exclusion of evidence relating to the past sexual behavior of the complaining witness applies in child molestation cases.[7] But the rape shield law does not prohibit testimony of previous false allegations by the victim.[8] Before such evidence can be admitted, "the trial court must make a 'threshold determination (outside the presence of the jury) that a reasonable probability of falsity exists.' [Cit.]"[9] The defendant has the burden of coming forward with evidence establishing a reasonable probability that the victim made a prior false allegation of molestation.[10]

The trial court heard Mann's proffer outside the presence of the jury and determined that no reasonable probability of falsity existed. The only evidence tending to show that V. E.'s prior allegations of molestation were false is the fact that the officer investigating the matter had failed to seek an arrest warrant for the alleged molester for more than one year after the complaint was made. That fact is not sufficient to establish that the allegations were false.[11] We find that the trial court properly excluded this evidence.

3. Mann contends that one of the State's witnesses referred to his probation revocation hearing, thereby improperly placing his character into evidence. The statement was made by R. C.'s father during cross-examination by Mann's counsel:

MANN'S COUNSEL: Okay. Let me get you to assume for the purpose of this question that your wife testified and said that you had talked with [R. C.] many times about his testimony in court. Is that true or is that untrue?
R. C.'S FATHER: I have talked to him in the past, back when this — right after the court or the first time —
MANN'S COUNSEL: Let's say July.
R. C.'S FATHER: — The revocation hearing —

At the conclusion of R. C.'s father's testimony, after a court-ordered recess, Mann moved for a mistrial. He specifically asked the court not to give curative instructions. The trial judge concluded that there was no reason to believe that anything R. C.'s father had said would notify the jury of Mann's probation revocation hearing or of the results of that hearing. He instructed counsel for the State to be careful with her witnesses in the future.

The decision whether to grant a mistrial is within the trial

---

[6] OCGA § 24-2-3 (a).

[7] *McGarity v. State*, 224 Ga. App. 302, 303 (1) (480 SE2d 319) (1997).

[8] *Smith v. State*, 259 Ga. 135, 137-138 (1) (377 SE2d 158) (1989).

[9] Id.

[10] See *Kelley v. State*, 233 Ga. App. 244, 251 (5) (503 SE2d 881) (1998).

[11] Id.

court's sound discretion, and the court's ruling will not be disturbed absent an abuse of discretion.[12] We agree with the trial court that it is highly unlikely that the jury knew what R. C.'s father was referring to when he mentioned the revocation hearing. We find no error in denying the motion for mistrial after Mann specifically requested that no curative instructions be given.[13]

4. Mann sought a mistrial after the State played the videotaped interviews of the victims. He challenged the taped interview of R. C.'s stepmother because in it she mentioned that Mann had a probation officer and was probably still on probation for child molestation. The trial court denied Mann's motion, finding that Mann had intentionally placed his character into evidence in his opening statement by telling the jury that he had previously been convicted of child molestation and had served five years in prison.

After hearing Mann's opening statement, the jury was aware of his status as a convicted child molester. Under the circumstances, the comment by one of the State's witnesses that she thought that Mann was on probation for child molestation was not a sufficient ground for mistrial.

5. Mann takes issue with the trial court's refusal to allow him to impeach one of the State's witnesses with evidence of V. E.'s prior allegations of molestation, which the court had previously excluded in response to the State's motion in limine. We upheld the exclusion of that evidence in Division 2, supra.

We now turn to Lane's claims of error.

6. Lane contends that the trial court erred by granting the State's motion in limine to exclude as irrelevant evidence that V. E.'s mother had been sexually abused. Lane intended to introduce the evidence to show that V. E.'s mother had influenced her daughter's testimony because of her own history of sexual abuse.

The scope of cross-examination is within the sound discretion of the trial court,[14] and irrelevant matter should be excluded.[15] Although the trial court gave Lane sufficient opportunity to present evidence that V. E. knew that her mother had been sexually abused, he failed to do so. Without such proof or other proof that her mother improperly influenced her testimony, we agree that the prior sexual abuse of V. E.'s mother is irrelevant and was properly excluded.

7. Lane claims the trial court should not have granted the State's motion in limine to exclude the prior allegations of molestation made by V. E. in her initial interview with DFACS. Lane contends that V.

---

[12] *Osborn v. State*, 233 Ga. App. 257, 258 (1) (504 SE2d 74) (1998).
[13] See id.
[14] *Andrews v. State*, 222 Ga. App. 129 (1) (a) (473 SE2d 247) (1996).
[15] OCGA § 24-2-1.

E.'s statements were inconsistent and that both interviews should have been shown to the jury to show that someone other than Lane had molested V. E.

We addressed this issue in Division 2, supra.

8. Lane contends that the trial court erred in not granting a continuance when the State filed a motion in limine on the morning of trial. But Lane fails to support this claim with any argument or citation of authority. Therefore, it is deemed abandoned.[16]

9. Lane claims the State committed prosecutorial misconduct by making an inaccurate statement regarding the date of the incidents at issue but fails to indicate where in the record the statement can be found. Each enumerated error must be supported in the brief by specific reference to the record or transcript.[17] In the absence of any such reference, we will not search for or consider the claim of error.[18]

We also note that prosecutorial misconduct must be objected to at trial to warrant reversal on appeal.[19] We find nothing in the record indicating that Lane raised this issue at trial.

10. Finally, Lane contends that the verdict was contrary to the law and the evidence. Although Lane has abandoned this claim by failing to support it with any argument or citation of authority,[20] we will address it nevertheless.

Lane was convicted on Count 1, causing V. E. to put her mouth on the penis of R. C., and Count 7, causing V. E. to touch the penis of R. C. V. E.'s trial testimony was sufficient to authorize the conviction on Count 1.[21] V. E.'s second videotaped interview and Officer Clark's testimony of his interview with V. E., to which there was no objection, were sufficient to authorize the conviction on Count 7.[22]

*Judgment affirmed. Johnson, C. J., and Mikell, J., concur.*

DECIDED JUNE 30, 2000.

*Charles E. Pinkard, Jr.*, for appellant (case no. A00A0748).
*Diane M. Locklear*, for appellant (case no. A00A0749).
*James R. Osborne, District Attorney, Jane A. Levendusky, Laura C. Herrin, Assistant District Attorneys*, for appellee.

---

[16] Court of Appeals Rule 27 (c) (2).
[17] Court of Appeals Rule 27 (c) (3) (i).
[18] Id.
[19] *Beecher v. State*, 240 Ga. App. 457, 459 (3) (523 SE2d 54) (1999).
[20] Court of Appeals Rule 27 (c) (2).
[21] *Johnson*, supra; *Cantrell*, supra.
[22] See *Godbey*, supra.