**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**June 18, 2013**

# In the Court of Appeals of Georgia

A13A0356. HALL v. STATE.                                    DO - 014 C

DOYLE, Presiding Judge.

A jury found Brandon Hall guilty of unlawful possession of a destructive device,[1] possession of methamphetamine,[2] possession of a knife during the commission of a felony,[3] possession of a firearm during the commission of a felony,[4] loitering and prowling,[5] possession of an explosive device by a convicted felon,[6] and

---

[1] OCGA § 16-7-88 (a).

[2] OCGA § 16-13-30 (a).

[3] OCGA § 16-11-106 (b) (4).

[4] Id.

[5] OCGA § 16-11-36 (a).

[6] OCGA § 16-7-83 (a).

possession of a firearm by a convicted felon.[7] Following the order granting the withdrawal of his motion for new trial ,[8] Hall directly appeals, challenging the sufficiency of the evidence. For the reasons set forth below, we affirm.

Construed in favor of the verdict,[9] the evidence shows that late one evening, Hall arrived at a diner and remained for six to seven hours, intermittently drinking coffee, eating breakfast, and falling asleep. The night manager had to wake Hall several times throughout the night. After the shift change, the morning manager arrived and noticed that Hall was openly armed with two pistols and a machete at his waistline in open view. The manager called 911 and requested the assistance of the police. The police found Hall standing outside the diner and detained him, recovering two pistols, a bag of methamphetamine, a large serrated knife, a black powder loader, gun powder, a flare gun, flashlights, BB guns, , and a pill bottle .

The police also seized documents, which referenced hate groups and contained the phrases "blow the switch yard at the mothball power plant," and "you bitches are

---

[7] OCGA § 16-11-131 (b).

[8] See *Heard v. State*, 274 Ga. 196, 197 (1) (552 SE2d 818) (2001) (allowing a direct appeal following a court order disposing of defendant's motion to withdraw his motion for new trial).

[9] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

dead for murdering my family . . . this should really be an eye opener you suck and chug donkey c[---] . . . f[---] off and die and drink some acid."

The State presented a forensic chemist from the FBI who testified that Hall's pill bottle contained black powder, "a low explosive." A detective testified to processing a metallic capsule that contained black powder, a .22 caliber shell, and eight other bullets. An officer with bomb training testified that the police did not discover a .22 caliber weapon in Hall's possession, indicating that the logical purpose of the shells was to act as a source of secondary shrapnel in an explosive device. Further, the State presented an explosives expert who opined that explosive devices can be as small as a pill bottle and that the threads can and often will result in friction leading to an explosion.

Hall was indicted for multiple counts arising from the weapons and methamphetamine, and a jury found Hall guilty on all but two counts (explosive device and concealed weapon), which were nolle prossed. After he withdrew his motion for new trial, Hall filed this appeal.

Hall challenges the sufficiency of the evidence on the following grounds: (1) with respect to unlawful possession of a destructive device, the State failed to prove that the black powder was intended for the purpose of explosion or that Hall had the

knowledge or intent to injure an individual; (2) with respect to the possession of a firearm counts, the State introduced no evidence that the black powder revolvers Hall possessed would or could be converted to expel a projectile by the action of an explosive or electrical charge; and (3) the evidence of loitering and prowling was insufficient because Hall was a customer of the diner.

When reviewing the sufficiency of the evidence,

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime[s] charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all the evidence* is to be considered in the light most favorable to the prosecution.[10]

1. Hall contends that the evidence was insufficient to sustain a conviction of unlawful possession of a destructive device because the State failed to prove that the

---

[10] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

4

black powder was intended for the purpose of explosion or with the knowledge or intent to injure an individual. We disagree.

OCGA § 16-7-88 (a) provides in pertinent part that it is illegal for a person to "possess, transport, or receive . . . any destructive device or explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or to destroy any public building."

It is undisputed that Hall was in possession of an explosive, i.e., the pill capsule containing black powder, "a low explosive." Further, the police found several letters written by Hall that threatened to kill at least one person and to "blow the switch yard at the mothball power plant." Additionally, an officer trained in explosives testified that the purpose of the bullets in the pill bottle containing black powder was to provide a secondary source of shrapnel that could cause serious injury. The possession of the powder stored in a container which could ignite it, coupled with Hall's threatening writings, satisfied the State's burden.[11]

---

[11] See *Turner v. State*, 246 Ga. App. 49, 51 (1) (b) (539 SE2d 553) (2000) (holding that possession of explosive devices combined with handwritten notes indicating potential violent acts is sufficient to support a conviction of manufacturing a destructive device).

2. Hall contends that the evidence was insufficient to sustain his conviction of possession of a firearm during the commission of a felony and possession of a firearm by a convicted felon because the State introduced no evidence that the revolvers Hall possessed would or could be converted to expel a projectile by the action of an explosive or electrical charge. We disagree.

In *Senior v. State*,[12] this Court held as follows:

Georgia law prohibits the possession of a firearm by a convicted felon. *The term "firearm 'includes' any handgun, rifle, shotgun, or other weapon which will or can be converted to expel a projectile by the action of an explosive or electrical charge*." This Court has previously declined to interpret Georgia's statute to require proof that a weapon found in the possession of a convicted felon is actually functional when that weapon is one that is enumerated within the statutory definition of a firearm, i.e., a handgun, rifle or shotgun. We also decline to do so now. Thus, in order to support [Hall's] conviction, the State needed only to prove that [Hall] was a convicted felon and possessed a firearm as defined above.[13]

The officer found Hall outside the diner in possession of two black powder pistols. Hall does not challenge his status as a felon, and under *Senior*, the pistols he

---

[12] 277 Ga. App. 197 (626 SE2d 169) (2006).

[13] (Citations omitted; emphasis supplied.) Id. at 197-198.

6

possessed sufficed to support his conviction for possessing firearms during the commission of a felony and possession of a firearm by a convicted felon.[14]

3. Hall contends that the evidence was insufficient to sustain his conviction of loitering and prowling because he was a customer of the diner. We disagree.

Under Georgia law, "[a] person commits the offense of loitering or prowling when he is in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity."[15] The jury was authorized to find that there was an immediate concern for the safety of persons or property in the vicinity in light of Hall's prolonged presence over several hours, and the fact that he openly displayed multiple deadly weapons and possessed other dangerous items in his bag. Viewed in the light most favorable to the verdict, we find sufficient evidence to affirm the loitering or prowling conviction.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[14] See id.

[15] OCGA § 16-11-36.